Mark L. Javitch (CA SBN 323729)
JAVITCH LAW OFFICE
3 East 3rd Ave. Ste. 200
San Mateo, CA 94401
Telephone: (650) 781-8000
Facsimile: (650) 648-0705
mark@javitchlawoffice.com

*Attorney for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT FOR

# THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FOIACONSCIOUSNESS.COM LLC, a California limited liability company,<br><br>      Plaintiff,<br><br>v.<br><br>NATIONAL ARCHIVES AND RECORDS ADMINISTRATION, a federal agency,<br><br>      Defendant,<br><br>DALLAS COUNTY HISTORICAL FOUNDATION d/b/a THE SIXTH FLOOR MUSEUM AT DEALEY PLAZA,<br><br>      Respondent. | Case No.: _____<br><br>**COMPLAINT** |

FOIACONSCIOUSNESS.COM LLC, by and through its undersigned counsel, alleges as follows:

1. This is an action under the Freedom of Information Act ("FOIA" or the "Act"), 5 U.S.C. § 552, for declaratory, injunctive, and other appropriate relief, by FOIA CONSCIOUSNESS.COM LLC ("FC") against the National Archives and Records Administration ("NARA," "National Archives," or "Defendant"). The Complaint also names the Dallas County Historical Foundation d/b/a The Sixth Floor Museum At Dealey Plaza as

Respondent ("The Sixth Floor Museum" or, "Respondent") because it is a necessary party mandated to be joined by Rule 19.

2. In this FOIA action, Plaintiff seeks an end to restrictions on public access to the Zapruder film.

3. Despite its status as an official public record, the National Archives is refusing to produce copies of the Zapruder film in response to Plaintiff's valid FOIA request.

4. Specifically, Plaintiff seeks to compel NARA to comply with their lawful obligations under FOIA to release the requested records in their possession.

5. Plaintiff FOIACONSCIOUSNESS.COM is a website that permits users to discuss and develop FOIA requests.

6. Plaintiff requested Moses Weitzman's copies of the Zapruder Film which are currently held by the National Archives in Baltimore, Maryland. The request was transmitted to NARA by the undersigned counsel.

7. In response, NARA asserted that a copyright was held by a third party, Respondent The Sixth Floor Museum.

8. NARA said it could not release the records without permission from The Sixth Floor Museum, which Plaintiff had not obtained.

9. Accordingly, by failing to grant Plaintiff's valid FOIA request, NARA unlawfully withheld the records requested by Plaintiff in violation of FOIA based on the assertion of a third party's copyright, which is not a FOIA exemption.

10. The automatic assertion of third party copyright is in opposition to the public's strong interest in access to information held by the National Archives and Records

Administration, whose materials are supposed to be a symbol of transparency and intended for the public's right to know about its own government.

11. The presumption of openness of the Zapruder film should be at a maximum because the film is a JFK assassination record. Congress recognized this interest in enacting the JFK Act, which states that "all Government records concerning the assassination of President John F. Kennedy should carry a presumption of immediate disclosure." JFK Act § 2(a)(2). Further, there is a significant potential for public benefit in JFK-related FOIA inquiries. *See Morley v. CIA*, 894 F.3d 389, 402 (D.C. Cir. 2018).

12. Federal Courts have jurisdiction to enjoin an agency from unlawfully withholding records in response to FOIA requests.

13. Plaintiff is statutorily entitled to disclosure of these videos, which it seeks so that it may inform the public about the Zapruder film, which was suppressed from the public for many years.

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction over this action and personal jurisdiction over NARA pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

15. Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B).

## DIVISIONAL ASSIGNMENT

16. Pursuant to Civil L.R. 3-2(c) and 3-5(b), this action should be assigned under Civil L.R. 3-2(c) and (d) to the San Francisco or Oakland division because it arose in San Mateo County, CA.

## PARTIES

17. FOIACONSCIOUSNESS.COM LLC ("FC") is a limited liability company organized and existing under the state of California.

3

18. Defendant National Archives and Records Administration ("NARA") is an agency of the federal government within the meaning of 5 U.S.C. § 551, 5 U.S.C. § 552(f), and 5 U.S.C. § 702, which has possession, custody, and/or control of the records that Plaintiff seeks.

19. The headquarters of NARA is located at 1300 Pennsylvania Ave., NW Washington, DC 20229.

20. NARA asserts that a third party copyright held by Respondent The Sixth Floor Museum prevents disclosure of the requested records.

21. The Dallas Historical Foundation d/b/a The Sixth Floor Museum at Dealey Plaza is a non-profit organization incorporated in Texas.

22. The Sixth Floor Museum is a museum that is located on the exact floor of the former Texas School Book Depository building where the Warren Commission concluded that Mr. Oswald fired the shots that killed President Kennedy and injured Texas Governor John Connally.

23. Fed. R. Civ. P. 19(a)(1)(B)(ii) requires that "[a] person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if…that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may…leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest."

24. Respondent The Sixth Floor Museum is a necessary and indispensable party that must be joined under Fed. R. Civ. P. 19 as the asserted copyright holder. *See Weisberg v. Dep't of Just.*, 631 F.2d 824, 829, 203 (D.C. Cir. 1980).

## IMPORTANCE OF THE ZAPRUDER FILM TO THE JFK INVESTIGATIONS

25. The shocking assassination of President Kennedy on November 22, 1963 as he rode in a motorcade through downtown Dallas, Texas has understandably attracted widespread and enduring public attention.

26. In the immediate aftermath, President Johnson assembled esteemed members of the public to generate a report that would attempt to settle pending questions.

27. Though the Warren Commission concluded that Lee Harvey Oswald was the sole culprit responsible for the assassination, historians and members of the public continued to seek more information about how such an unexpected tragedy could have occurred. Three times since 1963, Congress further investigated the details of the assassination.

28. Nearly all investigation have heavily depended on what is believed to be the most credible evidence available, an "amateur home video" of the assassination itself.

29. Abraham Zapruder, using his Bell & Howell Zoomatic movie camera, and perched on a concrete abutment captured the most comprehensive visual record of JFK's assassination.

30. In doing so, Mr. Zapruder, apparently by luck and happenstance, became the most important amateur motion picture photographer in American history.

31. The film spans approximately 26.6 seconds and contains a series of frames that detail the critical moments before, during, and after the shots were fired at Kennedy and Texas Governor John Connally.

32. The Zapruder film is invaluable for historians, researchers, and the public in understanding the sequence of events that immediately led to President Kennedy's death.

33. The film is understandably considered the most researched film ever.

34. "Zapruder Frames Numbers" were assigned from Z1 to Z486 so that the camera's capture speed in frames per second could be used to "timeclock" the shots to the limo occupants' reactions.

35. By viewing the speed of JFK and Governor Connaly's reactions, investigators speculated on how many shots there were and when shots hit the president and governor.

36. The Zapruder film played a crucial role in establishing the Warren Commission's official conclusions that Mr. Oswald fired three shots from the sixth floor of the Texas School Book Depository and that one of those shots caused injuries to both JFK and Governor Connally. (the "Single Bullet theory")

37. The Single Bullet theory heavily relied on the perception that such few Zapruder frames passed between JFK's and Governor Connally's visible reactions to gunfire that it was possible that that same bullet pierced through both JFK and Governor Connally at high speed.

38. However, the Single Bullet theory could not be sufficiently debated because while the Warren Commission had access to the film, the national public audience was not even able to view the film until 1975.

## SUPPRESSION OF THE FILM FROM THE PUBLIC

39. Even though the Zapruder film is indisputably the most critical evidence of the crime of the century, and heavily used in official investigations, *the film was not shown to the public and was actually suppressed* for 12 (twelve) years until 1975. After 1975, the film's "copyright" retained by the Zapruder family would be used to justify further restrictions on access to the film. Apparently, those restrictions continue to this day.

40. In a bizarre series of events, subsequent to the assassination, although government investigators were aware of the film, they did not immediately seize the film as evidence for use in the investigation of the president's murder.

41. Instead, the film was quickly moved into private hands and kept out of the public's eye.

42. Selling the film to a private third party was used as a further means to prevent the public from viewing the film.

43. By the Monday following the assassination, Mr. Zapruder sold the film to Time, Inc. d/b/a Life magazine for $150,000 (at least $1.5m in today's dollars).

44. But inexplicably rebuffing the profit-seeking motive, Time, Inc. generally refused to permit the film to be shown as a motion picture.

45. When Professor Josiah Thompson tried to publish a book containing *illustrations of some Zapruder frames*, Time, Inc. sued (unsuccessfully) to prevent publication. *See Time Inc. v. Bernard Geis Associates*, 293 F.Supp. 130, 146 (S.D.N.Y. 1968).

46. The contents of the film were further suppressed by other means. The Warren Commission published selected poor quality black and white frames and reversed the order of two frames. Only selected frames were published in Time's magazines along with misleading commentary.

47. Some were first able to see the film during the 1969 trial of Clay Shaw, later depicted in Oliver Stone's JFK. After that, some researchers were able to obtain bootleg copies.

48. The national public only saw the film for the first time when Geraldo Rivera aired it on Good Night America on March 6, 1975.

## SUPPRESSION OF THE ZAPRUDER FILM BY COPYRIGHT ABUSE

49. After twelve years of refusing to show the film, after its airing by Geraldo, Time, Inc. gave the film back to the Zapruder family for $1.

50. But the family's stewardship of the film did not improve public access.

51. The family formed a partnership, LMH Co., and began collecting royalties and licensing fees.

52. Recognizing its historical value, the Zapruder film was designated as an "assassination record" by the National Archives and Records Administration (NARA).

53. In 1999, the U.S. government agreed to pay the Zapruder family $16 million for the film.

54. Despite selling the film to the government, the Zapruder family then "donated" the copyright to The Sixth Floor Museum.

55. The Sixth Floor Museum (through NARA) now asserts control over the copyright of the film, even in response to FOIA requests, where copyright is not a FOIA exemption.

56. Contrary to FOIA law, in response to its FOIA request, NARA informed Plaintiff that permission from The Sixth Floor Museum is needed to obtain the Moses Weitzman version of the Zapruder film.

57. Plaintiff never sought, nor does Plaintiff have such permission from The Sixth Floor Museum. Plaintiff does not believe that such permission is necessary to obtain a copy of the film under FOIA.

58. On the basis of lacking permission from The Sixth Floor Museum, nonetheless, NARA refused to provide Plaintiff with a copy of the records it requested that are in the possession of the National Archives.

## COPYRIGHT IS NOT A FOIA EXEMPTION

59. But NARA fails to cite any FOIA exemption in asserting The Sixth Floor's copyright prevents disclosure.

60. It is unlawful for NARA to deny legitimate FOIA requests based on Plaintiff's lack of holding permission from the Sixth Floor.

61. On the contrary, NARA should maintain the film to ensure its long-term preservation and accessibility for future generations.

62. But NARA's current maintenance of the Zapruder film is causing confusion – when searching for the Zapruder film in the archives, there are many different versions with incomplete provenance.

63. To find out the difference between the versions, Plaintiff requested to view two of the versions made by Moses Weitzman.

64. After Life magazine obtained the Zapruder film, there was an immediate recognition of the need for professional analysis and enhancement to better understand the details captured in the footage.

65. Moses Weitzman was known for his expertise in photographic processing and analysis and was hired by Life magazine for this task.

66. Weitzman employed innovative photographic enhancement techniques, including enlargement of frames, contrast adjustment, and sharpening of images.

67. Such enhancements were critical in aiding the visual analysis of the sequence of events captured in the film.

68. Apparently NARA's conduct indicates that *any and all versions* of the Zapruder film are under the lock and key of the copyright held by the Sixth Floor Museum.

69. This is improper to treat public records this way, especially those with such public interest. By making the Zapruder film easily accessible, the National Archives would better scholarly research, enhance the public's understanding of this pivotal moment in American history, and foster a more informed discussion about the events surrounding the JFK assassination.

## Plaintiff's FOIA Request

70. On December 11, 2023, attorney Mark L. Javitch, on behalf of FC, submitted a FOIA request to National Archives via email. The Requests were for:

(1) Moses Weitzman's version of the Zapruder film – NAID: 597131 Local ID: 541-LIBRARY-53

(2) Moses Weitzman's version of the Zapruder film with Manipulations done at the National Archives – NAID: 596950 Local ID: 541-LIBRARY-53

See Exhibit A.

71. The Request complied with all applicable regulations regarding the submission of FOIA requests.

## Defendant's Treatment of Plaintiff's FOIA Request

72. On December 12, 2023, Defendant NARA sent a letter acknowledging receipt and stating the request would be forwarded to the Office of Research Services, Motion Picture and Sound Branch. See Exhibit B.

73. On December 22, 2023, Defendant NARA sent a letter assigning tracking number 2412740. See Exhibit C.

74. NARA said "However, permission to reproduce the Zapruder film must be obtained from the Sixth Floor Museum before copies can be made…" *Id*.

75. On December 24, 2023, counsel for Plaintiff filed an appeal. Counsel emailed the appeal to foia@nara.gov. It stated that "the response does not meet the requirements of the Freedom of Information Act because it failed to produce a copy of the film and it failed to cite any FOIA exemptions that would be required to withhold production…" See Exhibit D.

76. On December 27, 2023, NARA responded acknowledging the appeal and assigning tracking number NGC24-020A. See Exhibit E.

77. As of the filing of this Complaint, it has been more than 20 (twenty) working days since Plaintiff filed its appeal and its appeal was submitted and acknowledged. Defendant has failed to inform Plaintiff of the results if its appeal.

78. No further information or communication concerning the Request has been received or sent by Plaintiff.

79. As of the date of this filing, Defendant has failed to:

   a. Respond to Plaintiff's appeal; and

   b. produce the requested records or demonstrate that the requested records are lawfully exempt from production.

## CAUSE OF ACTION
### Violation of FOIA for Failure to Disclose Records
### Against The National Archives and Records Administration

80. Plaintiff incorporates the foregoing paragraphs herein.

81. Defendant NARA is a federal agency subject to FOIA.

82. On December 11, 2023, Plaintiff submitted a request. Through the Request, Plaintiff properly asked for records within the possession, custody and/or control of Defendant.

83. NARA asserted that Respondent The Sixth Floor Museum possesses copyright over the requested Moses Weitzman versions of the Zapruder film.

11

84. On December 22, 2023, Plaintiff's request was timely denied because Plaintiff did not obtain permission from The Sixth Floor Museum.

85. On December 24, 2023, Plaintiff submitted its appeal on the basis that Defendant's failure to provide a copy of the requested videos because The Sixth Floor Museum holds a copyright does not constitute a legitimate and lawful exemption to FOIA.

86. As of the date of this filing, more than twenty working days have passed, and NARA failed to substantively respond or notify Plaintiff regarding the results of its appeal.

87. Accordingly, Plaintiff has and/or is deemed to have constructively exhausted applicable administrative remedies with respect to the Request. 5 U.S.C. § 552(a)(6)(A); *id*. § 552(a)(6)(C).

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

1) declare that the records responsive to the Request are non-exempt;

2) declare that Plaintiff is entitled to disclosure of the records responsive to the Request;

3) declare that The Sixth Floor Museum's purported assertion of copyright does not constitute an exemption to FOIA;

4) enjoin Defendant from continuing to withhold all non-exempt records or portions thereof responsive to Plaintiff's Request;

5) award Plaintiff reasonable attorney's fees and costs reasonably incurred in this action pursuant to 5 U.S.C. § 552(a)(4)(E); and

6) grant such other relief as the Court may deem just and proper.

Dated: February 20, 2024     Respectfully submitted,

By: /s/ Mark L. Javitch
Mark L. Javitch (California SBN 323729)
Javitch Law Office
3 East 3rd Ave. Ste. 200
San Mateo CA 94401
Tel: (650) 781-8000
Fax: (650) 648-0705
mark@javitchlawoffice.com

*Attorneys for Plaintiff*